DOCKETED

SEP - 8 2003

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
Eastern Division

**FILED**

AUG 2 9 2003

WAYNE R. ANDERSEN
U. S. DISTRICT COURT JUDGE

|                          |   |                               |
|--------------------------|---|-------------------------------|
| Eazypower Corporation,   | ) |                               |
|                          | ) | Civil Action No. 03–cv–3164   |
| Plaintiff,               | ) |                               |
|                          | ) | Judge Anderson                |
| v.                       | ) |                               |
|                          | ) | Magistrate Judge Denlow       |
| Alden Corporation,       | ) |                               |
|                          | ) | August 28, 2003               |
| Defendant.               | ) |                               |
|                          | ) |                               |

## Reply in Support of Defendant's Motion to Dismiss for Failure to State a Claim and Lack of Subject Matter Jurisdiction

14

<u>Table of Contents</u>

I.      <u>Subject Matter Jurisdiction of Eazypower's Declaratory Judgment Count Must Be Evaluated at the Time the Complaint Was Filed, and at That Time, There Was No Actual Controversy Over Pending Patent Rights</u>...................................................1

    A.      *No Justiciable Controversy Can Exist Before a Patent Issues*.....................................2

    B.      *"Provisional" Rights Are Conditional and Can Only Be Asserted Retroactively, After a Patent Has Issued* ......................................................................3

    C.      *Eazypower Is Clearly Seeking Advisory Opinions Based on Hypothetical Facts* ........3

    D.      *Eazypower's Amended Complaint Cannot Cure the Subject Matter Jurisdiction Deficiencies of the Original Complaint* ........................................................5

II.     <u>Alden's Notice Letters Are Immunized Petitioning Activity</u> ...................................5

    A.      *Alden's Letters Are Precisely the Type of Statements Protected by the <u>Noerr-Pennington</u> Doctrine and the First Amendment Right to Petition*.............................6

    B.      *Eazypower's Allegations of "Bad Faith" Are Conclusory, Misplaced, and Unsupported by a Factual Record*..................................................................8

III.    <u>Conclusion</u> ....................................................................................10

Defendant Alden Corporation ("Alden") responds to the Opposition filed by Plaintiff Eazypower Corporation ("Eazypower") as follows.

Alden has moved to dismiss this Action under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure because the Complaint filed by Eazypower on May 12, 2003 (1) lacks subject matter jurisdiction with respect to a Declaratory Judgment Count pertaining to the infringement and validity of then-pending patent rights; and (2) fails to state a claim upon which relief may be granted with respect to Alden's letters providing actual notice of Alden's published patent application pursuant to 35 U.S.C. § 154(d).

Eazypower's Opposition incorrectly asserts that a controversy existed to support a Declaratory Judgment Count. (See, e.g., Opposition, p. 3). Eazypower's Amended Complaint cannot cure the deficiency in the relief requested. Further, Eazypower mischaracterizes the nature of the provisional rights provided by 35 U.S.C. § 154(d).

Eazypower's Opposition also ignores the most relevant case law with respect to the <u>Noerr-Pennington</u>, or First Amendment right to petition, immunity. (See, e.g., Opposition, p. 8). It is clear that Alden was merely complying with the requirements of the patent statute so as to preserve its ability to seek retroactive recourse for pre-issuance infringement, where applicable.[1] Alden's actions are, therefore, the type of activity protected by the <u>Noerr-Pennington</u> Doctrine and the First Amendment right to petition embodied therein.

I.    <u>Subject Matter Jurisdiction of Eazypower's Declaratory Judgment Count Must Be Evaluated at the Time the Complaint Was Filed, and at That Time, There Was No Actual Controversy Over Pending Patent Rights</u>

As noted by both parties, subject matter jurisdiction over requests for declaratory relief only extends to cases of "actual controversy". <u>See</u> 28 U.S.C. § 2201. There must be "a real and substantial controversy admitting of <u>specific relief</u> through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." <u>Aetna Life Ins. Co. v. Haworth</u>, 300 U.S. 227, 241, 57

---

[1] Eazypower will not be greatly prejudiced if this Action is dismissed. Alden filed an Action for patent infringement against Eazypower in the District of Connecticut, on July 22, 2003, the date the patent issued. Therefore, Eazypower's concerns and defenses relating to Alden's patent rights can be addressed in that case. If this Action is dismissed as requested, Eazypower only loses the attempt to select the forum. It is clear that Eazypower was not entitled to preemptively select the forum for resolution of its controversy with the patent holder, Alden, before any patent rights existed.

S. Ct. 461, 464 (1937) (emphasis added). Moreover, "[j]usticiability must be judged as of the time of filing, not as of some indeterminate future date when the court might reach the merits and the patent has issued." <u>GAF Building Materials Corp. v. Elk Corp. of Dallas</u>, 90 F.3d 479, 481 (Fed. Cir. 1996) (filing an Amended Complaint did not cure the subject matter jurisdiction deficiencies in an original Declaratory Judgment Action filed before a patent issued).

### A.    *No Justiciable Controversy Can Exist Before a Patent Issues*

As recognized by Eazypower, there are two prerequisites to establishing an actual controversy in Declaratory Judgment Actions concerning patents: (1) reasonable apprehension of suit; and (2) actual production of or preparation to produce an article that could infringe the patent. (See Opposition, p. 5; but cf. Opposition, p. 3 (asserting a controversy exists merely because the parties dispute whether provisional rights apply)). The former prerequisite is at issue here. Eazypower relies on notice letters sent by Alden pursuant to 35 U.S.C. § 154(d) to conclude that a justiciable controversy existed on May 12, 2003, when it filed its Complaint. (See Opposition, pp. 5-6). However, Eazypower's argument does not, and indeed could not, establish that there was reasonable apprehension of suit, or any real, concrete controversy, at that time. Factually, Alden could not file suit on May 12, 2003; there was no patent to assert and such a suit would lack subject matter jurisdiction. Clearly, Eazypower's sole intention was to file suit in a favorable forum before Alden had any legal basis to file a suit for patent infringement.

A patent cannot be infringed until it has issued. <u>See</u> 35 U.S.C. § 271 (limited to "a patented invention" or "a patent"). While a patent application is pending, the applicant only has an inchoate right which matures upon issuance. <u>See</u> <u>Mullins Mfg. Co. v. Booth</u>, 125 F.2d 660, 664 (6th Cir. 1942). Accordingly, numerous cases have held that threats with respect to <u>pending patent applications</u>, and not granted patents, do not create justiciable cases or controversies, even where the two prerequisites can be established. <u>See, e.g.</u>, <u>GAF</u>, 90 F.3d at 482; <u>Spectronics Corp. v. H.B. Fuller Co.</u>, 940 F.2d 631, 636 (Fed. Cir. 1991) ("Later events may not create jurisdiction where none existed at the time of filing."). The American Inventor Protection Act of 1999 ("AIPA"), and the amendment of the patent laws to recognize provisional rights, did not alter this jurisdictional requirement of the federal courts. In fact, no part of the Patent Act authorizes a patent applicant to bring suit for infringement of a pending patent application. Instead, the

"provisional" rights obtained in a pending patent application can only be applied retroactively, once a patent issues. See 35 U.S.C. § 154(d). Accordingly, Eazypower's dismissal of the relevant case law addressing declaratory judgment actions addressing patents before issuance, such as GAF, is improper. (See Opposition, p. 4).

     B.    *"Provisional" Rights Are Conditional and Can Only Be Asserted Retroactively, After a Patent Has Issued*

     Prior to the AIPA, a patent applicant could not prevent another's use of an invention covered by a pending patent application until the application issued into a patent. Now, under Section 154(d) of the Patent Act, damages for patent infringement may retroactively apply – i.e., after the patent issues – to acts of infringement that had occurred while the patent application was pending.

     These "provisional" rights are subject to a number of conditions before they can be perfected. For example, the application must be published, and actual notice of the published application must be provided to the alleged infringer.[2] See 35 U.S.C. § 154(d)(1). Most importantly, the patent must issue before a reasonable royalty for pre-issuance infringement can be applied. See id. ("[A] patent shall include the right to obtain a reasonable royalty . . . ."). This is confirmed by another requirement of the statute: that there be substantial identity between at least one claim in the published patent application and the issued patent, which claim was infringed at least during the pending period of the application, after actual notice of the published application is provided. See id. § 154(d)(2). Clearly, one cannot assert such "provisional" rights before the patent is issued because it would be impossible to compare the published claims with issued claims. See id.

     C.    *Eazypower Is Clearly Seeking Advisory Opinions Based on Hypothetical Facts*

     In order to determine whether Eazypower's Declaratory Judgment Count is proper, one should also look at what relief Eazypower enlists the Court to provide. That

---

[2] Eazypower disputes that Alden provided "actual notice" of its published patent application. (See Opposition, p. 12). This issue is discussed in more detail, infra. However, Eazypower's assertion that no "actual" notice was provided causes one to ponder how an actual controversy could then exist. Eazypower does not address this inconsistency in its arguments. Clearly, no actual controversy could ever exist regarding patent rights before the issuance of the patent. See GAF, 90 F.3d at 482 ("We therefore hold that a threat is not sufficient to create a case or controversy unless it is made with respect to a patent that has issued before a complaint is filed.").

is, has Eazypower sought "specific relief" from the Court, or is the Court being asked to provide an advisory opinion. See Aetna Life, 300 U.S. at 240-41, 57 S. Ct. at 464.

In the original Complaint, Eazypower asked for the following relief:

> (4) A declaration that neither Eazypower nor its customers will be liable for payment of a reasonable royalty or any other remedy for sales occurring before Alden's patent issues;
> (5) A declaration that the claims of Alden's published application do not cover Eazypower's products;
> (6) A declaration that the allowed claims of Alden's pending application do not cover Eazypower's products;
> (7) A declaration that the allowed claims of Alden's pending application are invalid . . . .

(See Complaint, p. 11).

Thus, Eazypower's original Complaint did not request "specific relief" from any perfected claim that Alden could make at that time. As noted above, the Complaint was filed before Alden's patent issued. Eazypower requests the Court to make determinations regarding "provisional rights" before a patent has issued, and before Alden held reciprocal rights that would create an immediate, justiciable controversy. This directly contradicts Section 154(d) which requires comparison of the published claims with the issued claims before a reasonable royalty is applied. See 35 U.S.C. § 154(d)(2).

Moreover, declarations from the Court regarding "claims of Alden's published application" and "allowed claims of Alden's pending application" merely involve advisory opinions from the Court that are not appropriate for judicial determination. See Aetna Life, 300 U.S. at 240-41, 57 S. Ct. at 464 ("A justiciable controversy is thus distinguished from a difference or dispute of a hypothetical or abstract character; from one that is academic or moot. The controversy must be definite and concrete, touching the legal relations of parties having adverse legal interests."). Since pending claims provide only an inchoate right, such declarations would have no legal effect on the infringement or validity of Alden's issued patent.

The Federal Circuit's decision in GAF is especially applicable. There, the court stated that "disputes concerning patent validity and infringement are necessarily hypothetical before patent issuance." GAF, 90 F.3d at 483. The fact that Eazypower seeks relief with respect to claims from Alden's pending patent application makes the court's reasoning no more applicable. (Cf. Opposition, p. 5). Because "provisional rights" are only applied retroactively, after the patent issues, any disputes concerning

4

validity and infringement of claims, even those in a published patent application, will necessarily be hypothetical before the patent issues.

D. *Eazypower's Amended Complaint Cannot Cure the Subject Matter Jurisdiction Deficiencies of the Original Complaint*

When Alden's patent issued on July 22, 2003, Eazypower filed an Amended Complaint seeking declaratory relief with respect to the actual patent. (See Opposition, p. 5, n.1). However, Eazypower's Amended Complaint, if permitted, or an alternative Supplemental Complaint, if leave is granted, cannot save the improperly filed original Complaint. "The presence or absence of jurisdiction must be determined on the facts existing at the time the complaint under consideration was filed." Arrowhead Indus. Water, Inc. v. Ecolochem, Inc., 846 F.2d 731, 734 n.2 (Fed. Cir. 1988); see also Spectronics, 940 F.2d at 636 ("Later events may not create jurisdiction where none existed at the time of filing."). In fact, both tactics were rejected in GAF where the original Complaint was filed before issuance of the patent and sought anticipatory declaratory relief:

> GAF also apparently contends that it cured the absence of subject matter jurisdiction by amending its complaint after the patent issued. . . . [T]here was no jurisdiction when GAF filed its original complaint. Also, GAF never moved to supplement its pleadings as required by Fed.R.Civ.P. 15(d). The district court did not abuse its discretion in adhering to the motion requirement of Rule 15 or in determining that it was not in the interest of justice to permit GAF to supplement its pleadings.

GAF, 90 F.3d at 483 (emphasis added) (footnote omitted).[3]

II. Alden's Notice Letters Are Immunized Petitioning Activity

The letters sent by Alden to Eazypower and others (Exhs. A-D) to provide notice of Alden's pending patent rights are precisely the kind of petitioning activity that is immunized from suit under the Noerr-Pennington doctrine, which encompasses the

---

[3] Eazypower filed an Amended Complaint on July 22, 2003 (the date Alden's patent issued). (See Opposition, p. 5). Interestingly, in a footnote in the Opposition, Eazypower requests leave to file a Supplemental Complaint under Rule 15(d) if and to the extent the Court concludes that such action should have been taken by Eazypower. (See Opposition, p. 5, n.1). Alden has also filed a Complaint for patent infringement in the District of Connecticut on July 22, 2003, which will pre-date any Supplemental Complaint filed by Eazypower should leave be granted. Should the Court determine that Eazypower's request for leave should be considered, Alden respectfully requests the opportunity to oppose the request, and to address, inter alia, the issue of whether it would be in the interest of justice to permit Eazypower to supplement its pleadings. See GAF, 90 F.3d at 483.

First Amendment right to petition. "[P]arties may petition the government for official action favorable to their interests without fear of suit, even if the result of the petition, if granted, might harm the interests of others." Tarpley v. Keistler, 188 F.3d 788, 794 (7th Cir. 1999). The sending of cease and desist letters to potential infringers is "reasonably and normally attendant upon protected litigation" and therefore may be protected petitioning activity. See Versatile Plastics, Inc. v. Sknowbest! Inc., 247 F. Supp. 2d 1098, 1103 (E.D. Wisc. 2003); Thermos Co. v. Igloo Prods. Corp., 1995 WL 842,002, at *4-5 (N.D. Ill. Sept. 27, 1995) (Exh. E). Therefore, this Court should dismiss Counts I, II, III and V in Eazypower's Complaint pursuant to Rule 12(b)(6) because the Counts fail to state a claim upon which relief may be granted.

> A. *Alden's Letters Are Precisely the Type of Statements Protected by the Noerr-Pennington Doctrine and the First Amendment Right to Petition*

Contrary to Eazypower's assertions, the reasoning in Versatile Plastics is directly on point with the issues at hand. Here, Alden sent actual notice letters to alleged infringers of its pending patent rights pursuant to 35 U.S.C. § 154(d). As previously noted, these letters are a requirement of the patent laws. (See Memo-in-Chief, pp. 2-4, 7-8). Had no notice been provided, Alden would have forfeited the right to retroactively seek a reasonable royalty for pre-issuance damages. See 35 U.S.C. § 154(d)(1)(B). Though dealing with actual notice of an issued patent, the court in Versatile Plastics held that the explicit requirement in the patent laws for providing actual notice of infringement, and the linking of damages awards to such notice being provided, brings actual notice letters and cease and desist letters in the context of patent cases within the ambit of the Noerr-Pennington Doctrine. See Versatile Plastics, 247 F. Supp. 2d at 1104-05 ("A patent holder who sends a cease and desist letter to persons believed to be infringing is entitled to some protection from liability for damages resulting therefrom.").

Certainly Versatile Plastics is more relevant and persuasive to the issues at hand than the cases cited by Eazypower. Those cases do not deal with the provision of actual notice of patent rights, and more importantly, the statutory requirements therefor. Instead, for example, Cook, Inc. v. Boston Scientific Corp., 2002 WL 335314 (N.D. Ill. Feb. 28, 2002) (attached as Exh. G), deals with a notice letter and a blanket press release related to breach of contract issues. See id. at *1. The other cases cited by Eazypower are similarly unrelated to the enforcement of patent rights. For example, Black &

Decker, Inc. v. Pro-Tech Power Inc., 26 F. Supp. 2d 834 (E.D. Va. 1998), is essentially a trademark and trade dress case. The false advertising counterclaims were based on the use of a "Made in the USA" logo on advertisements and a letter sent to the defendants customers asserting trademark infringement by the defendant. See id. at 864, 866. In Whelan v. Abell, 48 F.3d 1247 (D.C. Cir. 1995), the unfair competition claims were based on allegedly fabricated charges and statements made to the Maryland Division of Securities and in a related lawsuit. See id. at 1250.

It is difficult to see how Eazypower's cases are more persuasive than Versatile Plastics and the other cases relied on by Alden. The distinction between notice letters in patent cases and non-patent cases is significant with respect to Noerr-Pennington immunity. See, e.g., Versatile Plastics, 247 F. Supp. 2d at 1104; Keystone Retaining Wall Sys., Inc. v. Rockwood Retaining Walls, Inc., 2001 WL 951582, at *11 (D. Minn. Aug. 22, 2001) ("Unlike Cardtoons, where the letters threatening litigation were not required, the notice requirements of 35 U.S.C. § 287 put Keystone's actions within the ambit of immunized activity under the Noerr-Pennington doctrine.") (Exh. F); see also Zenith Elecs. Corp. v. Exzec, Inc., 182 F.3d 1340, 1353 (Fed. Cir. 1999) (a patentee "has the right to . . . enforce its patent, and that includes threatening alleged infringers with suit."). Therefore, cases actually dealing with patent notice letters are highly relevant to the issues at hand.

The proper focus is on the fact that "the patent laws explicitly sanction and require notice letters to be sent in some situations" and that such letters "are more properly described as actions taken by the patent owners as a step of securing their legal rights in the event of future litigation." Versatile Plastics, 247 F. Supp. 2d at 1104-05. The fact that the cases cited by Alden deal with actual notice of an issued patent under 35 U.S.C. § 287, and the present Action deals with actual notice of published patent application under 35 U.S.C. § 154(d), makes no difference with respect to immunity under the Noerr-Pennington Doctrine or the First Amendment right to petition. In both situations, notice is sanctioned and required, and being provided, in part, for the benefit of the alleged infringer. See SRI Int'l, Inc. v. Advanced Tech. Labs., Inc., 127 F.3d 1462, 1470 (Fed. Cir. 1997) ("The requirement of actual notice under § 287(a) is designed to assure that the recipient knew of the adverse patent during the period in which liability accrues . . . ."). Therefore, Alden was statutorily obligated to provide notice of its published patent application to alleged infringers or forfeit the

7

ability to seek pre-issuance damages once the patent issues. This fact is not addressed by any of the cases cited by Eazypower.

If the Noerr-Pennington Doctrine applies to actual notices given by a patentee after a patent issues, the Doctrine should apply with greater import to actual notices given before a patent issues. After issuance, the patentee often has the option of giving the less "notable" constructive notice by patent marking in lieu of actual notice. See 35 U.S.C. § 287. Before issuance, the patent applicant has no such option, and is compelled by 35 U.S.C. § 154(d) to give actual notice of infringement or forfeit the right to recover pre-issuance damages.

> B.   *Eazypower's Allegations of "Bad Faith" Are Conclusory, Misplaced, and Unsupported by a Factual Record*

As the relevant cases recognize, the Noerr-Pennington immunity applies to notice letters in the context of patent infringement unless the recipient of such letters has alleged and can ultimately prove that such letters were sent in bad faith. See Versatile Plastics, 247 F. Supp. 2d at 1105-06 & n.2. It is clear that to maintain its unfair competition Counts, Eazypower must allege, with sufficiency in the Complaint, bad faith on the part of Alden when the notice letters were sent to Eazypower's customers. "Bad faith is determined on a case by case basis." DCI Mktg. Inc. v. Justrite Mfg. Co., 213 F. Supp. 2d 971, 972 (E.D. Wisc. 2002). Mere assertions of bad faith in the Complaint and conclusory statements that the patentee knew the patent was "worthless, invalid and unenforceable" or "failed to exercise reasonable care in determining the truth" of statements in its notice letters are insufficient to establish bad faith and avoid a motion to dismiss. Id. at 1106. Here, the purported evidence presented by Eazypower fails to establish that Alden acted in bad faith in complying with the notice provisions of the Patent Act.

Eazypower makes much out of the fact that Alden did not provide the identity of the patent application serial number or the publication number in its original notice letters.[4] (See Opposition, p. 12). However, the failure to identify the application by publication number does not mean that the letters were sent in bad faith. Additionally, it is not an express requirement of Section 154(d) to provide the actual publication

---

[4] Eazypower therefore asserts that Alden failed to provide "actual" notice pursuant to 35 U.S.C. § 154(d). (See Opposition, p. 12). Eazypower never explains how this apparent lack of actual notice results in the actual controversy it confidently asserts elsewhere in its Opposition. (Cf. Opposition, p. 3).

8

number. See 35 U.S.C. § 154(d)(1). Instead, the statute merely requires that the alleged infringer "had actual notice of the published patent application." Id. Alden's letters clearly provided the title, subject matter and owner of the patent application, and each letter expressly states that "[t]his letter is to put you on notice that the patent issuing from the allowed application will be infringed by, or contributorily infringed by [Eazypower's] 'removers'." (See Exhs. A-D). Clearly, actual notice was provided.[5]

Moreover, Eazypower has failed to identify statements in any of Alden's letters that would support an inference of bad faith on the part of Alden.

> [T]he communication of accurate information about patent rights, whether by direct notice to potential infringers or by a press release, does not support a finding of bad faith. Communication of information for a competitive commercial purpose is not improper, and bad faith is not supported when the information is objectively accurate.

DCI Mktg., 213 F. Supp. 2d at 972-73 (dismissal of unfair competition claims under Lanham Act and Illinois state laws where notice letters sent to defendant's customers do not support a finding of bad faith).

Eazypower's other proof of purported "bad faith" is its own conclusion that the Eazypower products do not infringe any of Alden's allowed claims. (See Opposition, pp. 12-13). Obviously, Alden does not share this conclusion, and it is improper for Eazypower to impute its opinion to Alden in order to infer "bad faith". Eazypower has failed to provide sufficient evidence that Alden sent notice letters with knowledge that there was no infringement of the likely patent claims. Moreover establishing that allegations of infringement are incorrect does not automatically prove bad faith. In fact, the Noerr-Pennington Doctrine applies even where the initial allegations are proven incorrect, absent a specific showing of bad faith. See Versatile Plastics, 247 F. Supp. 2d at 1105 n.2 ("[T]he policy question involves a balancing of the interests noted throughout this opinion. That is, the issue comes down to a determination of which party should bear the loss that results when a patentee incorrectly asserts its patent rights. The present state of the law, as declared by the Federal Circuit, is that the loss falls on the innocent competitor, absent a showing of bad faith on the part of the patentee, even when the assertions are not made in the context of pending litigation.").

---

[5] In Alden's second letter to Eazypower on April 14, 2003, ten days after the original letter, the publication number of the application was provided upon Eazypower's request.

Eazypower identifies a July 9, 2003 letter from Alden's litigation counsel as evidence that Alden sent its original letters in bad faith. (See Opposition, pp. 12-13 & Exh. A). However, Eazypower misconstrues that letter in its own favor. Close examination of this letter reveals that it is not the "smoking gun" of bad faith that Eazypower makes it out to be. Nowhere in the letter is it stated that Alden could not, or would not assert direct infringement of any allowed claim of Alden's patent. (Cf. Opposition, pp. 12-13). Instead, the following statements were made:

- "Alden asserts that the Eazypower extractors infringe <u>at least</u> Claims 7 and 8 of the pending Alden patent application." (emphasis added)
- "Eazypower is liable <u>at least</u> for contributory infringement and inducement of infringement of patent claims 7 and 8." (emphasis added)
- "<u>We also contend that Eazypower infringes other claims</u> of the Alden patent, but until we have had discovery, claims 7 and 8 should suffice." (emphasis added)

Moreover, the July 9, 2003 letter has little to do with the issue at hand – i.e., whether Eazypower has sufficiently asserted bad faith on the part of Alden when its notice letters were sent. In fact, Eazypower cannot identify any evidence to support bad faith on Alden's part, and as a result, Eazypower must rely on conclusory statement, misinterpretation of statements, and attorney argument.

Further, none of the purported actions highlighted on pages 14-15 of the Opposition have anything to do with proving that Alden sent letters to Eazypower's customers in bad faith.

III.    <u>Conclusion</u>

For the foregoing reasons, in addition to those presented in Alden's Memorandum-in-Chief, Alden respectfully requests this Court to dismiss Eazypower's Declaratory Judgment Count pursuant to Rule 12(b)(1), and Eazypower's unfair competition Counts pursuant to Rule 12(b)(6). Eazypower will not be prejudiced by the dismissal of this Action, since its claims can be brought in the pending patent infringement suit in the U.S. District Court for the District of Connecticut without the jurisdictional defects in this Action.

Respectfully submitted,

Alden Corporation,
Defendant

Dated: August 28, 2003

By: _____
John C. Linderman
Wm. Tucker Griffith
McCormick, Paulding & Huber, LLP
CityPlace II, 185 Asylum Street
Hartford, CT 06103
Tel. (860) 549-5290
Fax (860) 527-0464

-and-

Jeffrey E. Schiller
Schuyler, Roche & Zwirner
One Prudential Plaza, Suite 3800
130 East Randolph Street
Chicago, IL 60601
Tel. (312) 565-2400
Fax (312) 565-8300

Its Attorneys

11

## Certificate of Service

I hereby certify that on the 28th day of August 2003, a true copy of the foregoing REPLY IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM AND LACK OF SUBJECT MATTER JURISDICTION was mailed, via First Class Mail to the following counsel of record:

> Robert B. Breisblatt
> Kara F. Cenar
> Philip D. Segrest, Jr.
> Joseph E. Cwik
> Welsh & Katz, Ltd.
> 120 South Riverside Plaza, 22nd Floor
> Chicago, IL 60606

By: _____
    Wm. Tucker Griffith

# SEE CASE FILE FOR EXHIBITS